UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TIFFANY B. [1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-02696-DLP-JMS |
| | ) |
| KILOLO KIJAKAZI, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Plaintiff Tiffany B. requests judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d). For the reasons set forth below, this Court hereby **REVERSES** the ALJ's decision denying the Plaintiff benefits and **REMANDS** this matter for further consideration.

### I. PROCEDURAL HISTORY

On September 5, 2017, Tiffany proactively filed her application for Title XVI SSI benefits. (Dkt. 13-2 at 16, R. 15). Tiffany alleged disability resulting from post-traumatic stress disorder (PTSD), heart attack with stent placement (s/p mi with stent placement), anxiety and depression, asthma, coronary artery disease (CAD), chronic migraine headaches, chronic pain, hypertension (HTN), obesity, and Wolff-

---

[1] In an effort to protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has adopted the recommendations put forth by the Court Administration and Case Management Committee of the Administrative Office of the United States Courts regarding the practice of using only the first name and last initial of any non-government parties in Social Security opinions. The Undersigned has elected to implement that practice in this Order.

1

Parkinson-White syndrome. (Dkt. 13-3 at 3, R. 60). The Social Security Administration ("SSA") denied Tiffany's claim initially on November 9, 2017, (Dkt. 13-4 at 5-13, R. 87-95), and on reconsideration on January 11, 2018. (Id. at 17-23, R. 99-105). On March 9, 2018, Tiffany filed a written request for a hearing, which was granted. (Dkt. 13-2 at 16, R. 15; Dkt. 13-4 at 24, R. 106).

On August 22, 2019, Administrative Law Judge ("ALJ") Shelette Veal conducted a hearing, where Tiffany appeared in person and vocational expert Deborah Dutton-Lambert appeared telephonically. (Dkt. 13-2 at 37-59, R. 36-58). On October 7, 2019, ALJ Veal issued an unfavorable decision finding that Tiffany was not disabled. (Dkt. 13-2 at 16-30, R. 15-29). Tiffany appealed the ALJ's decision, and on August 13, 2020, the Appeals Council denied Tiffany's request for review, making the ALJ's decision final. (Dkt. 13-2 at 2, R. 1). Tiffany now seeks judicial review of the ALJ's decision denying benefits pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  STANDARD OF REVIEW

To qualify for disability, a claimant must be disabled within the meaning of the Social Security Act. To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant's impairments must be of such severity that she is not able to perform the work she previously

engaged in and, based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A).

The SSA has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 416.920(a).[2] The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves [her] unable to perform [her] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 416.920; *Briscoe*, 425 F.3d at 352. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995); *see also* 20 C.F.R. § 416.920. (A negative answer at any point, other than step three, terminates the inquiry and leads to a determination that the claimant is not disabled.).

---

[2] The Code of Federal Regulations contains separate, parallel sections pertaining to disability benefits under the different titles of the Social Security Act, such as the one cited here that is applicable to supplemental security income benefits. Often, as is the case here, the parallel section pertaining to the other type of benefits—in this case disability insurance benefits—is verbatim and makes no substantive legal distinction based on the benefit type. *See* 20 C.F.R. § 404.1520(a).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The RFC is an assessment of what a claimant can do despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). In making this assessment, the ALJ must consider all the relevant evidence in the record. *Id.* at 1001. The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work in the national economy. *See* 20 C.F.R. § 416.920(a)(4)(iv)-(v).

The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id.* The Commissioner must then establish that the claimant – in light of her age, education, job experience, and residual functional capacity to work – is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 416.920(f).

Judicial review of the Commissioner's denial of benefits is to determine whether it was supported by substantial evidence or is the result of an error of law. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). This review is limited to determining whether the ALJ's decision adequately discusses the issues and is based on substantial evidence. Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is not whether Tiffany is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

Under this administrative law substantial evidence standard, the Court reviews the ALJ's decision to determine if there is a logical and accurate bridge between the evidence and the conclusion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). In this substantial evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Nevertheless, the Court must conduct a critical review of the evidence before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, she must build an "accurate and logical bridge from the evidence to [her] conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004).

5

The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford*, 227 F.3d at 872.

## III.   BACKGROUND

### A. Factual Background

Tiffany was twenty-six years old when she applied for SSI. (Dkt. 13-3 at 2, R. 59). She has completed one year of college and reported past work as an in-home patient care aide and cashier, though she did not work either of these jobs on a full-time basis or for an extended period of time. (Dkt. 13-6 at 6-7, R. 188-89).

### B. ALJ Decision

In determining whether Tiffany qualified for benefits under the Act, the ALJ employed the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920(a) and concluded that Tiffany was not disabled. (Dkt. 13-2 at 30, R. 29). At Step One, the ALJ found Tiffany had not engaged in substantial gainful activity since her September 5, 2017 application date.[3] (Id. at 18, R. 17).

At Step Two, the ALJ found that Tiffany suffered from the following severe impairments: cardiac dysrhythmia, Wolff-Parkinson-White syndrome[4], post-

---

[3] SSI is not compensable before the application date. 20 C.F.R. § 416.335.
[4] Wolff-Parkinson-White syndrome is a rare condition in which an extra electrical pathway between the upper and lower chambers of an individual's heart causes a rapid heartbeat. Besides a rapid heartbeat, other common symptoms associated with the condition include dizziness, lightheadedness, fatigue, anxiety, chest pain, difficulty breathing, and fainting. *Wolff-Parkinson-White (WPW) syndrome*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/wolff-parkinson-white-syndrome/symptoms-causes/syc-20354626 (last visited Jan. 24, 2022).

traumatic stress disorder, depression, and anxiety. (Dkt. 13-2 at 18, R. 17). The ALJ also found Tiffany had non-severe impairments of coronary artery disease, hypertension, gastroesophageal reflux (GERD), migraine headaches, hyperlipidemia, asthma, and obesity. (Id. at 18-19, R. 17-18).

At Step Three, the ALJ found that Tiffany's impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. §§ 416.920(d), 415.925, 416.926. (Dkt. 13-2 at 19, R. 18). Additionally, in considering the "paragraph B" criteria, the ALJ found that Tiffany had a moderate limitation in interacting with others, but only mild limitations in understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (Id. at 20-22, R. 19-21).

After Step Three but before Step Four, the ALJ found that Tiffany had the residual functional capacity ("RFC") to perform light work, except Tiffany can occasionally lift twenty pounds; frequently lift or carry ten pounds; stand or walk for six hours, and sit for six hours per eight-hour workday; occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasionally balance on level surfaces; occasionally stoop, kneel, crouch, and crawl; occasionally interact with supervisors and coworkers, but should avoid contact with the public; and must avoid concentrated exposure to humidity, noise, fumes, odors, dust, and gases. (Dkt. 13-2 at 22, R. 21).

At Step Four, the ALJ concluded that Tiffany had no past relevant work. (Dkt. 13-2 at 29, R. 28). At Step Five, relying on the vocational expert's testimony,

the ALJ determined that, considering Tiffany's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that Tiffany could perform. (Dkt. 13-2 at 29-30, R. 28-29). The ALJ concluded that Tiffany was not disabled. (Id. at 30, R. 29).

## IV.  ANALYSIS

Tiffany argues that the ALJ committed reversible error in the RFC (1) by failing to account for her need for an emotional support animal, and (2) by failing to properly account for her concentration-related mental limitations. The Court will address each argument in turn.

### A. Need for Emotional Support Animal

Tiffany claims that the ALJ improperly failed to address her need for an emotional support animal in the RFC assessment.[5] (Dkt. 17 at 12). Tiffany first asserts that the ALJ's failure to account for her need for an emotional support animal is contrary to the United States Supreme Court's ruling in *Cleveland v. Policy Mgmt. Sys. Corp. et al.*, 526 U.S. 795 (1999), and Social Security Ruling 00-

---

[5] The Court notes that Plaintiff appears to use "emotional support animal" and "service animal" interchangeably. However, under the Americans with Disabilities Act, these terms have different meanings. The ADA defines "service animal" as:
> [A]ny dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability…. The work or tasks performed by a service animal must be directly related to the individual's disability. Examples of work or tasks include, but are not limited to, … assisting an individual during a seizure … providing physical support and assistance with balance and stability to individuals with mobility disabilities, and helping persons with psychiatric and neurological disabilities by preventing or interrupting impulsive or destructive behaviors. The crime deterrent effects of an animal's presence and the provision of emotional support, wellbeing, comfort, or companionship do not constitute work or tasks for the purposes of this definition.

*Riley v. Bd. of Comm'rs of Tippecanoe Cnty.*, No. 4:14-CV-063-JD, 2017 WL 4181143, at *5 (N.D. Ind. Sept. 21, 2017) (quoting 28 C.F.R. § 35.104).

1c. (Dkt. 17 at 10-11). Tiffany maintains that if these standards had been correctly applied, this would have resulted in the ALJ finding that Tiffany's need for an emotional support animal was work-preclusive. (Dkt. 17 at 11). The Commissioner maintains that Plaintiff misconstrues the Supreme Court's finding in *Cleveland*. (Dkt. 21 at 7). The Court agrees.

The Court does not interpret *Cleveland* and SSR 00-1c[6] as requiring a finding of work preclusion if a claimant requires an emotional support animal. In *Cleveland*, the issue before the Supreme Court was simply whether under the law, a special presumption exists that would estop a social security recipient from simultaneously pursuing an American with Disabilities Act discrimination claim. 526 U.S. at 797. The Court found that "pursuit, and receipt, of SSDI benefits does not automatically estop the recipient from pursuing an ADA claim. Nor does the law erect a strong presumption against the recipient's success under the ADA." *Id.* at 797-98. Nowhere in the opinion does the Supreme Court indicate that the need for an accommodation is work preclusive for purposes of a SSA determination.

Next, Tiffany argues that although the ALJ accepted her treating provider's opinion in favor of her receiving a companion animal due to her mental impairments, the ALJ failed to address this need in her RFC assessment. (Dkt. 17 at 12). The Commissioner counters two reasons for how the ALJ appropriately assessed Plaintiff's need for a service dog in the disability determination. (Dkt. 21 at 6-7). First, the Commissioner argues that under the new regulation redefining

---

[6] SSR 00-1c adopts the holdings of *Cleveland v. Policy Mgmt. Sys. Corp. et al. See* SSR 00-1c, 2000 WL 5889.

9

medical opinions, 20 C.F.R. § 416.920c, Ms. Owens's letter is not a medical opinion because it lacks statements regarding what Tiffany can do despite her impairments, and thus fails to satisfy the definition of a medical opinion. (Dkt. 21 at 6). Even if the Court would deem it a medical opinion, the Commissioner maintains that Ms. Owens's letter failed to support a finding that Tiffany needed a dog to work, given the context in which the letter was provided. (Id. at 6-7). Instead, Defendant claims that Ms. Owens drafted the letter of support in response to Tiffany's request for documentation to support her keeping her dog because her landlord would not otherwise allow her to keep a pit bull on the premises. (Id. at 6 (citing Dkt. 13-8 at p. 195-96; R. 847-48)). In reply, Plaintiff contends that Ms. Owens's letter is a medical opinion that the ALJ weighed as a medical opinion, found to be supported by the record, and thus was required to explain her rejection of the opinion or seek clarification from Ms. Owens. (Dkt. 24 at 1-3).

On February 18, 2019, Family Nurse Practitioner Lisa Owens prepared a letter in support of Tiffany's need for a service dog. (Dkt. 13-8 at 183, R. 835). Ms. Owens noted that Tiffany struggles with anxiety and emotional instability, and was on multiple medications for depression, anxiety, and PTSD. (Dkt. 13-8 at 183, R. 835). Ms. Owens also stated that after consulting with Tiffany's behavioral therapist and gaining insight into Tiffany's past and chronicity of her mental health issues, she was "in favor of a service dog for Tiffany to provide emotional comfort and support due to PTSD, depression, and panic disorder." (Id.).

10

At the hearing, Tiffany testified that she has had her current emotional support dog for approximately one year. (Dkt. 13-2 at 42-43, R. 41-42).[7] Tiffany attested that during this time, the dog has undergone six hours of professional training through Special O.P.S. K-9 in North Webster, Indiana. (Id. at 43-44, R. 42-43). Tiffany also asserted that she trains the dog herself at home, in accordance with the trainer's directions. (Id.). Tiffany maintained that her health care professionals felt she needed a support animal to help her with her mental impairments. (Id. at 44, R. 43). Tiffany testified that the dog had helped with her anxiety and depression. (Id. at 44, 52-53, R. 43, 51-52). In addition, Tiffany represented that her support animal had positively affected the frequency of her nightmares. (Dkt. 13-2 at 50, 52, R. 49, 51). Tiffany declared that her emotional support dog has also made it easier for her to go to the grocery store. (Id. at 52, R. 51). Tiffany further testified that her dog alerts her to her heart issues but did not indicate what training her dog has had to alert her to her heart issues. (Id. at 55, R. 54).

Based on Tiffany's representations at the hearing, the ALJ found that the evidence did not support that Tiffany had received a trained service dog, but rather utilized an emotional support animal. (Dkt. 13-2 at 52-55; R. 51-54). In her disability determination, the ALJ discussed the fact that Ms. Owens, claimant's primary care provider, supported Tiffany receiving a companion animal for "emotional comfort and support due to her PTSD, depression and panic disorder."

---

[7] Tiffany had previously started working on training a different dog, but that dog was hit and killed by a car. (Dkt. 13-2 at 43, R. 42).

11

(Dkt. 13-2 at 28, R. 27). The ALJ also noted that Ms. Owens's letter failed to provide an "explicit statement on the amount of time the claimant needs to spend with the service dog." (Id.) Without further analysis, the ALJ did not include limitations for Tiffany's use of an emotional support animal in her RFC or hypothetical questions posed to the vocational expert.

As an initial matter, the Court cannot accept the Commissioner's contention that Ms. Owens's letter was not accepted as a medical opinion by the ALJ. In the decision, the ALJ clearly identifies Ms. Owens as Tiffany's primary care provider and includes her assessment of Ms. Owens' medical opinion within the portion evaluating "medical opinion(s) and prior administrative medical finding(s)." (Dkt. 13-2 at 27-28, R. 26-27). *See also Phillips v. Astrue,* 413 F. App'x 878, 883 (7th Cir. 2010) ("We confine our review to the reasons offered by the ALJ and will not consider post-hoc rationalizations that the Commissioner provides to supplement the ALJ's assessment of the evidence."); *Villano v. Astrue*, No. 2:07 CV 187, 2009 WL 1803131, at *3 (N.D. Ind. June 23, 2009) (Commissioner's position limited to the ALJ's written decision, especially with respect to the required bridge between facts and conclusions, thus prohibiting post-hoc rationalization).

Plaintiff contends that the ALJ improperly failed to incorporate her need for a service animal into the RFC finding, and if the ALJ needed clarification regarding Tiffany's prescribed treatment, the ALJ should have sought additional documentation from Ms. Owens regarding the use of the service dog in Tiffany's prescribed treatment. (Dkt. 17 at 12-13).

"[T]he use of a service dog must be medically necessary to be considered in an RFC assessment." *McGehee v. Berryhill*, 386 F. Supp. 3d 80, 87-88 (D. Mass. July 2, 2019); *see also Horne v. Saul*, 2:19-CV-013-DCP, 2020 WL 1547068, at *11 (E.D. Tenn. March 31, 2020) (citing *Cruz v. Comm'r of Soc. Sec. Admin.*, 406 F. Supp. 3d 1337, 1346 (M.D. Fla. 2019) (noting "some courts have found that the use of a service dog must be medically necessary to be considered in an RFC assessment."); *Rentfro v. Colvin,* No. 14-cv-3015, 2015 WL 12868081, at *13 (C.D. Ill. Oct. 21, 2015) (finding that the ALJ's failure to adequately address evidence of plaintiff's prescription from doctor for service dog was material and noting that it was unclear "that a person could perform a cleaning job if her RFC required her to take a service dog with her to the job site."). "Absent a prescription, courts are split on whether a letter recommending a service dog from a medical source is sufficient to show that the dog is medically necessary." *McGehee*, 386 F. Supp. 3d at 88 (*comparing Payano v. Colvin*, No. 2:15-cv-00294-RFB-GWF, 2017 WL 4778593, at *4 (D. Nev. Oct. 23, 2017) (finding a letter from a psychiatrist recommending a service dog alone does not support an assessment that a dog is necessary for plaintiff to work and, therefore, it was harmless error for the ALJ to omit the need for a service dog in the hypothetical question to the vocational expert where the evidence failed to support that a service dog was necessary for plaintiff to work.) *with Santos v. Colvin*, No. 3:12-cv-05827, 2013 WL 5176846, at *5 (W.D. Wash. Sept. 12, 2013) (remanding where a doctor provided letter indicating that plaintiff required a service dog)).

Here, the Court finds that Tiffany has failed to establish that she received a therapy-dog prescription or that an emotional support animal was medically necessary for her to work. Ms. Owens's letter fails to medically prescribe such an animal or provide an opinion on the impact of a service animal on Tiffany's ability to work. Instead, the record suggests that Ms. Owens crafted the recommendation in response to Tiffany's request for documentation to present to her housing manager so that she could keep her pit bull in her home. (Dkt. 13-8 at 183, 195-96; R. 835, 847-48). Although Tiffany testified at the hearing that she used an emotional support animal for her anxiety and depression, Plaintiff failed to demonstrate that the support dog was medically necessary. Further, Tiffany fails to point to evidence in the record of the use of a service dog in her treatment notes, or that she ever actually utilized a properly trained service animal. Because Plaintiff points to no evidence in the record that says that an emotional support animal was medically necessary or required for Tiffany to work, the Court finds that the ALJ's failure to include the use of a companion animal in the RFC analysis was harmless.

### B. Concentration-Related Limitations

Next, Tiffany contends that the ALJ erred by failing to account for her mild mental limitations in concentration in either the RFC evaluation or in the hypothetical question posed to the vocational expert. (Dkt. 17 at 14-16). The Commissioner maintains that the ALJ properly considered the objective medical evidence and medical opinions, which supported the ALJ's finding of only social limitations, and no additional mental functional limitations. (Dkt. 21 at 5).

As noted above, at Step Three of the sequential evaluation process, the ALJ found that Tiffany had mild limitations in concentration, persistence, and pace. (Dkt. 13-2 at 21, R. 20). In reaching this determination, the ALJ considered Tiffany's statements, the medical record, and opinion evidence. (Dkt. 13-2 at 21, R. 20). The Plaintiff does not challenge the ALJ's "mild" classification finding in this area.[8] Instead, she argues that the ALJ erred by failing to account for the mild mental limitations in her RFC and in her hypothetical questions posed to the vocational expert in the sequential analysis. (Dkt. 17 at 15-16).

The Seventh Circuit has held that an ALJ must consider a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Christina B. v. Kijakazi*, No. 1:20-CV-01936-DLP-JRS, 2022 WL 178606, at *2 (S.D. Ind. Jan. 20, 2022) (quoting *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009)). If, after consideration, the ALJ determines that a mild limitation does "not merit a non-exertional limitation in the RFC, [she] is obligated to explain that conclusion so that [the Court] can follow the basis of [her] reasoning." *Muzzarelli v. Astrue*, No. 10 C 7570, 2011 WL 5873793, at *23 (N.D. Ill. Nov. 18, 2011) (citing *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005)).

In assessing Tiffany's RFC, the ALJ found that the record supported Tiffany's testimony regarding her anxiety and depression, and thus found that Tiffany had

---

[8] The ALJ acknowledged that in Tiffany's October 2017 Functional Report, Tiffany reported being able to concentrate for just thirty minutes, though she typically completes tasks that she begins. (Dkt. 13-2 at 21, R. 20). The ALJ noted that numerous of Tiffany's psychiatric evaluations indicated good concentration and attention. (Id.). The ALJ also noted that "[t]here is no persuasive opinion evidence" supporting more than a mild limitation in concentration, persistence, and pace. (Id.).

15

"moderate limitation in [her] ability to interact[] with others [and] mild limitation in concentration, persistence, or maintaining pace." (Dkt. 13-2 at 27-28, R. 26-27). In the RFC, however, the ALJ only addressed Tiffany's limitations in social functioning by limiting Tiffany to "occasional interaction with supervisors and coworkers, but no contact with the public." (Dkt. 13-2 at 29, R. 28). The opinion is void, however, of any explanation for why no functional limitations are warranted for Tiffany's concentration-related limitations.

This error is particularly important here where the vocational expert opined that "if an individual at any exertional level would be off task 20% of the workday," "that would preclude all work in the national economy." (Dkt. 13-2 at 57, R. 56). Accordingly, remand is necessary so that the ALJ may address Plaintiff's concentration limitations on her RFC and to ensure that any necessary restrictions are included in the RFC assessment and the hypothetical presented to the vocational expert. If the ALJ deems that no restrictions are warranted, she must provide the requisite "logical bridge" between the evidence and her conclusion. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). In light of this conclusion, the Court need not address Plaintiff's remaining arguments that the ALJ made various other errors in the RFC finding.

## V. CONCLUSION

For the reasons detailed herein, this Court **REVERSES** the ALJ's decision denying Plaintiff benefits and **REMANDS** this matter for further proceedings

pursuant to 42 U.S.C. § 405(g) (sentence four) as detailed above. Final judgment will issue accordingly.

    So ORDERED.

Date: 1/26/2022

Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email